trators or assigns, the full and just sum of nine hundred and sixty-eight dollars ($968). Cash, two hundred and fifty dollars; on the first day of January, one thousand eight hundred and seventy-three, two hundred and eighty seven dollars; on the first day of January, one thousand eight hundred and seventy-four, two hundred and seventy six dollars and thirty-four cents; on the first day of January, one thousand eight hundred and seventy-five, two hundred and forty-four dollars and twelve cents; on the first day of January, one thousand eight hundred and seventy six, two hundred and eleven dollars and eighty-one cents. And if there should happen to be any delay in either of the payments thereof, then with interest after that day at the rate of one and a half cents per month on each dollar, or eighteen dollars per annum; then the above obligation to be void and of none effect, or else to remain in full force and virtue." Passing by the discrepancy between the aggregate debt, as stated, and the sum total of the several instalments (which was accounted for in the court below upon the theory that each instalment included interest from date to maturity at 18 per cent. per annum), this court agreed with the Circuit Judge (Kershaw), that the interest called for was 18 per cent. per annum after the maturity of the last instalment. "There can be no doubt that the bond does contain a stipulation for the payment of interest at the rate of 18 per cent., and we think that there is as little doubt that there is no time specified within which such a rate is to be paid. * * * Of course, the legitimate conclusion from this view would be that each instalment would bear interest from its maturity, but, as we understand that the theory upon which both the referee and Circuit Judge proceeded was that the interest on each instalment had already been incorporated therein, it would be manifestly improper to allow it again. We are, therefore, of opinion that the conclusion reached by the Circuit Judge affords the best solution of the inquiry as to what is the proper construction of the peculiar terms of the bond. The judgment of this court is, that the judgment of the Circuit Court be affirmed." OPINION by MR. JUSTICE McIVER, February 13, 1890. *W. S. Tillinghast*, for appellant. *E. F. Warren*, contra.

No. 2527. RHODES *v.* RUSSELL. November Term, 1889.

This was an action for partition, in which the defendants denied that plaintiffs had any interest in the property, and set up an independent title in themselves. The following order of reference was passed: "On motion of E. F. Warren, Esq., plaintiff's attorney, and W. S. Tillinghast, defendants' attorney, ordered, that this cause be referred to C. J. C. Hutson, Esq., as special referee, to try and determine all issues of law and fact, with leave to report any special matter, and that said referee do report his findings to this court." The referee reported that plaintiffs had not proved title in themselves nor shown a common source of title to defendants and themselves, and he recommended that the complaint be dismissed. The plaintiffs excepted to this report upon the grounds that the referee erred in failing to find that a common source of title had been proved and plaintiffs had the better title, and in not ordering an issue before a jury. The Circuit Judge (Kershaw) decreed as follows:

"On reading and filing the report of C. J. C. Hutson, Esq., referee herein, and the exceptions of plaintiff, it appears to the satisfaction of the court that the question of title should be first settled, before any further proceedings should be had in the premises. It is ordered, that the exceptions be sustained and the finding of the referee be overruled. It is further ordered, that the question of title between the parties be and the same is hereby referred to a jury for trial at some future term of this court."

Defendants appealed, alleging error to this decree in deciding that a consent order of reference was not a waiver of right to trial by jury: and in holding that plaintiffs had shown a common source of title, or any title in themselves.

This court reversed the Circuit decree on account of error in ordering an issue to a jury, and the case was remanded for a hearing upon the referee's report. The court say: "Here the reference was as broad and as full as it could be, authorizing the referee to try and determine all issues of law and fact in the case; and this was made upon the motion of both the plaintiffs' and the defendants' attorneys, and with a knowledge, certainly, that the defendants Russell had set up in their answer an independent title, and a denial of title in the plaintiffs. This order, under the cases above, was a waiver of a jury trial on both sides; and we

think it was error, therefore, to grant a jury trial at the instance of one side.

"As to the other exceptions, we see nothing in the case which shows that his honor made any ruling on the subject of the common source of title, whether they had been proved or not. It is true that he sustained defendants' exceptions to the referee's report, in which this point was raised, and he overruled said report, in which it had been found that there was no evidence of a common source of title. But we suppose that his honor, having ordered an issue for the jury, necessarily overruled the report of the referee as a consequence of an issue being sent to a jury, and without regard to the merits of the report, whether well founded or not."

OPINION by MR. CHIEF JUSTICE SIMPSON, February 14, 1890. *W. S. Tillinghast.* for appellant. *E. F. Warren*, contra.

No. 2538. STANTON *v.* ALLEN. November Term, 1889. On October 30, 1886, plaintiff, a widow of about 60, living alone on her farm of 34 acres and possessed of some personalty, executed an agreement whereby she professed to lease said farm to her niece, Sarah A. Allen, and husband, "to hold for a term during my natural life; and the said Samuel D. Allen and S. A. Allen promises and agrees to let the said Charlotte Stanton occupy and remain with them as one of their family during her life-time, and obligates to take care of her during sickness and health, also to support and sustain and pay all necessary expenses pertaining to her welfare and happiness during her life, to pay all doctor's bills and taxes on said premises as above stated, and not to permit any other person or persons to occupy the same or any part thereof during her life, and if the said Samuel D. Allen and S. A. Allen, lessees, shall fail to comply with the above agreement as aforesaid, they will vacate and leave said premises without any recourse of law whatever."

The Allens not being willing to remove from their home in North Carolina on these terms, plaintiff executed and delivered, on November 4, 1886, a deed of gift to "Sarah A. Allen and the natural lawful heirs of her body and their assigns forever, all of my real estate, consisting of 34 acres of land on which I now reside, * * * also all my personal effects that I may own or pos-